**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**WILLIE LITTLETON**                                                                                    **PLAINTIFF**

**VS.**                                                       **NO. 3:04CV00224JMM**

**PILOT TRAVEL CENTERS, LLC**                                                       **DEFENDANT**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case was tried to the Court[1] on March 27, 2006. From a review of the evidence, which

included the transcript of the proceedings held on March 27, 2006 along with the pleadings, the

Court makes the following findings of fact and conclusions of law:

Findings of Fact

1.      Pilot Travel Centers LLC ("Pilot") is the nation's largest operator of travel centers

and largest seller of over-the-road diesel fuel. Pilot owns and operates over 250 travel centers in 37

states coast to coast.

2.      Pilot is an equal opportunity employer that prohibits discrimination on the basis of

race with respect to all aspects of employment, including compensation. Employees who believe

that they have been subjected to discrimination are instructed to immediately contact Human

Resources.

3.      Pilot operates its Travel Centers and its fuel transportation services as separate

---

[1]The Honorable George Howard, Jr. died on April 21, 2007. The case was reassigned to
the undersigned on April 27, 2007.

divisions within the Company.  Managers within the Transportation Department have no authority or supervisory responsibility over Travel Center operations.

4.      Within the Transportation Department, Pilot employs transport drivers who haul diesel fuel from refineries to Pilot Travel Center service stations.  Transport drivers are responsible for loading their trucks with fuel, transporting the fuel from a depot or refinery to designated Travel Centers, and unloading the fuel.

5.      Pilot also employs lead drivers in certain geographic locations.  In addition to transport driver responsibilities, lead drivers are responsible for maintaining Pilot's trucks, ensuring proper paperwork, and forwarding payments to Pilot's corporate offices.

6.      When setting base compensation rates for transport drivers, Pilot considers the geographic area where that driver will be employed.  Pilot considers raises for transport drivers annually in January.  Increases are based upon factors including cost of living, geographic location, and job performance.

7.      Littleton applied for employment with Pilot on August 18, 2000.  Randall Dyer, a Pilot Regional Manager, hired Littleton as a transport driver in Chattanooga, Tennessee, and he was paid at a starting rate of $10.00 an hour.

8.      Dyer recommended Littleton for a lead driver position in Troy, Illinois, where he had several years of prior experience as a truck driver.  Within two months of his hiring, Littleton transferred to Troy as a lead driver, and his wage was increased to $13.50/hour.  In January 2001, Littleton received a raise to $13.90/hour.

9.      In Troy, Littleton was supervised by Nick Peaker, who reported to David Breeding,

Pilot's Director of Transportation.

10.     Breeding was unhappy with Littleton's job performance in Troy. Littleton believed that the problems he experienced as the lead driver in Troy were due to leaking storage tanks at the Travel Center. The Troy location was not profitable, and Littleton was responsible for generating revenue at that location. Breeding wanted to make a change in Troy, and he decided to transfer Littleton to West Memphis, Arkansas.

11.     Breeding told Littleton that he could keep his lead driver wage rate after his transfer to West Memphis. Littleton understood that he was transferring from a lead driver position back to a transport driver position. He moved to West Memphis in June 2001.

12.     When Littleton arrived in West Memphis in June 2001, he was supervised by Eric Meyer, the lead driver in that area. Meyer is white. Meyer reported to Dyer, the Regional Manager who had originally hired Littleton in Chattanooga.

13.     At $13.90 per hour, Littleton was the highest paid transport driver in West Memphis when he arrived, despite the fact that all the other drivers had more seniority with the Company. Littleton's wage rate was even higher than his supervisor's (Meyer) hourly rate of pay.

14.     Dyer discovered soon after Littleton's arrival in West Memphis that his wage rate was the subject of discussion among other drivers, and Dyer perceived conflict regarding this issue because Littleton was paid more than other senior employees, including his supervisor. Dyer received complaints from three different drivers in West Memphis regarding the fact that Littleton was paid more to do the same job.

15.     In February 2002, Pilot demoted Meyer from his lead driver position due to poor

3

performance.  Like Littleton, Meyer retained his lead driver wage rate following his demotion.

16.     Breeding and Dyer decided to promote Cedric Clark to the lead driver position. Clark is black.  Clark then supervised Littleton.  Littleton has had no difficulty with Clark's supervision.

17.     Pilot typically makes compensation decisions for its drivers in January.

18.     In 2002, Breeding decided that Littleton would not receive a raise because he was still earning his lead driver pay.

19.     In February 2002, Littleton complained to Dyer about the fact that he did not receive a raise, and Dyer advised him that he would not receive a raise because he had been returned to a regular driver position, and he had to wait one year before receiving an increase.

20.     At the time, Littleton did not believe that his race had anything to do with the decision not to give him a raise in 2002.

21.     In January 2003, Breeding decided that Littleton's wage rate would remain constant because he was still earning more than all the other drivers in West Memphis, with the exception of Clark, the lead driver.  Although Breeding was responsible for approving raises for transport drivers, Dyer agreed with Breeding's decision in Littleton's case.

22.     When Littleton discovered that he would not receive an increase in 2003, Littleton contacted Breeding.  Breeding advised him that they had to get his wage rate in line with the rest of the drivers in West Memphis.

23.     Littleton subsequently learned that Howard Brown, a transport driver and former lead driver in Tennessee, had received a raise two years after he was removed from the lead position.

Because Brown is white, Littleton decided that Pilot was discriminating against him because he is black – and he did not receive a raise.

24.     On February 26, 2003, Littleton filed his Charge of Discrimination with the EEOC, asserting that "a similarly situated White male Truck driver was given a raise even though [Littleton] was told that Lead Drivers who return to a regular driver position could not receive a raise for the first year."

25.     At his deposition, Littleton identified Eric Meyer, Howard Brown, and Porter Beach as "similarly situated" former lead drivers.  All three transport drivers are white.

26.     Howard Brown has been employed as a driver for Pilot in Nashville, Tennessee, since 1987.  Pilot promoted Brown to lead driver in 1990.  Brown resigned his lead driver responsibilities in 2001 due to stress associated with the job.

27.     Brown did not receive a pay increase in 2001 following his resignation of lead driver responsibilities.  In 2002, however, Brown received a 30 cent raise; Breeding decided to raise Brown's pay in consideration of his many years of outstanding service.  In 2003, Brown received a 35 cent raise.

28.     Eric Meyer, the former lead driver in West Memphis, received a 30 cent raise in January 2002, to $13.70 per hour.

29.     Meyer was not demoted from the lead position until February 2002, however. Similar to Littleton, Breeding held Meyer's wage rate flat after his demotion; he did not receive a raise in 2003 or 2004.

30.     Porter Beach is employed as a transport driver in Chattanooga, Tennessee.   Littleton does not know when Porter Beach was hired at Pilot or the circumstances that lead to his demotion from lead driver to transport driver.

31.     Pilot hired Beach as a lead driver in 1990.  He worked as a lead until 2000, when he resigned his lead responsibilities after having open heart surgery.

32.     Dyer has never used racist or inappropriate language with Littleton, and Littleton does not believe that Dyer is racist.  Likewise, Breeding has never said anything to Littleton that leads him to believe that he is racist.

33.     Littleton does believe that Dyer did not respond appropriately to his complaints about Meyer.  Littleton believes that Meyer damaged his truck and broke into his locker because Meyer suspected that Littleton was transferred to West Memphis to take his job.

34.     Littleton remains employed at Pilot, and he is not interested in alternative employment, unless he finds an employer willing to pay him twice what he earns at Pilot.  Littleton calculates that he has lost approximately $3,900 as a result of Pilot's alleged discriminatory refusal to raise his wage rate.

## CONCLUSIONS OF LAW

1.     Title VII of the Civil Rights Act, as well as the Arkansas Civil Rights Act, protect against illegal discrimination with respect to "compensation, terms, conditions, or privileges" of employment. 42 U.S.C. § 2000e-2(a)(1). *See also* Ark. Code § 16-123-107.  Accordingly, Littleton must identify some form of concrete "adverse employment action" that was motivated by discriminatory animus in order to state a claim against his employer under the statutes identified in

his pleadings.    To be actionable, an adverse employment action must create a materially disadvantageous change in the employee's salary, benefits or responsibilities.  *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1026 (8th Cir. 2004).

2.      The only "material change" in Littleton's employment with Pilot was Pilot's decision following Littleton's transfer to West Memphis to hold his wage rate flat for a period of time, given the differential between his compensation and the wage rates paid to other more senior transport drivers performing the same job.  *Duncan*, 371 F.3d at 1026.

3.      In evaluating intentional discrimination claims, both federal and Arkansas state courts apply the three-pronged *McDonnell Douglas* test.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005); *Flentje v. First Nat. Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).  First, the Court must determine whether the plaintiff has established a *prima facie* case of discrimination.  Second, the Court decides whether the defendant has produced a legitimate, nondiscriminatory reason for its adverse employment action. Finally, the plaintiff must show that the defendant's stated reasons are actually a pretext for discrimination.  *Shanklin*, 397 F.3d at 602.

4.      In order to establish a *prima facie* case, Littleton must point to admissible evidence proving that (1) he is a member of a protected class; (2) he was qualified to receive the benefit he is seeking (*i.e.*, a raise in 2002 and 2003); (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated non-Black employees.  *Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000).  Littleton's has made a *prima facie* showing of all essential elements of his claim.

6.      Pilot has established a nondiscriminatory reason for its decision not to increase Littleton's wages following his transfer to West Memphis, namely, he was earning more money per hour than any other drivers in his region, all of whom had more seniority.  Once an employer produces nondiscriminatory reasons for its actions, the presumption created by a plaintiff's *prima facie* case disappears.  *Rose-Maston*, 133 F.3d at 1107.  The plaintiff must produce sufficient evidence to support a reasonable inference that the employer's proffered reason is merely a pretext for illegal discrimination.  *Duffy v. Wolle*, 123 F.3d 1026, 1036 (8th Cir. 1997).

7.      Littleton fails to establish that Pilot's reason for not increasing his wage rate in 2002 and 2003 was a pretext for race discrimination.  *Shanklin*, 397 F.3d at 603 (plaintiff's "bald assertions" that are unsupported by the record do not create an issue of fact for trial).

IT IS SO ORDERED this 14th day of September, 2007.


_____
James M. Moody
United States District Judge